UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STORMWATER SYSTEMS, INC., dba SAFE DRAIN, INC., a California corporation, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DOUGLAS REITMEYER, an individual, et al.,<br><br>Defendants. | No. 2:14-cv-0472-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

This case presents a complex dispute among former business associates.  On October 21, 2014, Stormwater Systerms, Inc. ("Stormwater") filed a complaint against Douglas Reitmeyer ("Reitmeyer"). ECF No. 1.  Thereafter, on November 12, 2014, Plaintiffs Stormwater dba Safe Drain, Inc. ("Safe Drain"), John Deming ("Deming"), and Safe Drain International, Inc. ("International") (collectively "Plaintiffs") filed the operative First Amended Complaint ("FAC") against Reitmeyer, Michael Brasberger, Sr. ("Brasberger, Sr."), Michael Brasberger, Jr. ("Brasberger, Jr.") and the Brasbergers' company ASHMB, LLC (collectively "Defendants").  ECF No. 5.  On November 20, 2014, thirty days after the filing of the initial complaint and eight days after they filed the FAC, Plaintiffs filed the instant Application for a Temporary Restraining Order ("Application").  ECF No. 9.  Reitmeyer filed an opposition to the Application on November 24, 2014.

1  ECF No. 13.  On November 25, 2014, the Court held a hearing at which counsel for
2  Plaintiffs and Reitmeyer appeared.[1]  At the conclusion of the hearing, the Court orally
3  denied Plaintiffs' Application.  ECF No. 17.  This Memorandum and Order serves as the
4  Court's formal ruling on the matter.   Any conflict between this Memorandum and Order
5  and the Court's oral decision shall be resolved according to this Memorandum and
6  Order.

## BACKGROUND

Thus far, the Court has heard from Plaintiffs and only one  Defendant.  Although there is little agreement among the parties about the events that have transpired over the past year, the Court's very basic understanding of the facts follows.

Deming has conducted business through Safe Drain[2] since approximately 2000, selling storm drain catch basins that capture pollutants and contaminants before they can enter the sewer system.  FAC, ECF No. 5 ¶¶ 14, 16.  Deming used the domain <safedrain.com>.  Id. ¶ 37.  In late 2013, Deming and Reitmeyer formed International, a Nevada corporation, to sell the drains through ten regional offices that correspond to the regional divisions established by the Environmental Protection Agency ("EPA").  Id. ¶ 22. Each regional office would be run by a regional sales director, who would earn 60% of the profits generated by drain sales  Id. ¶ 24.  Safe Drain would receive the remaining profits. Id.  Brasberger, Sr. and Brasberger, Jr. are regional sales directors of two regional offices.  Id. ¶ 25.

By mid-2014, business relations between Deming and Reitmeyer had started to deteriorate.  Plaintiffs allege that at an early July 2014 meeting, Deming and others, including Brasberger, Sr., confronted Reitmeyer about his alleged misuse of corporate

---

[1] It appears that neither the Brasbergers nor ASHMB, LLC, had been served with a summons and FAC at the time of the hearing.  ECF No. 12.

[2] Deming changed the name of the business to Stormwater Systems, Inc. due to other pending litigation.

2

funds. Id. ¶ 43.  On July 7, 2014, Deming and another regional sales manager, Benjamin "Buzz" Holmes, incorporated a new company called Safe Drain International Delaware with the purpose of selling drains without Reitmeyer's interference.  Id. ¶ 47. The Brasbergers and ASHMB were involved in this new company.  Id. ¶ 48.

Also during this time, Plaintiffs learned that Reitmeyer transferred the <safedrain.com> domain into his own name in January 2014.  Id. ¶ 43.  Moreover, Reitmeyer threatened to keep the domain until he "got what he wanted."  Id. ¶ 44.  On July 20, 2014, Deming took steps to rectify this alleged malfeasance by writing to the domain agent, GoDaddy, and explaining that the domain name at issue had been taken illegally.  Id. ¶ 45.  GoDaddy was nonetheless unable to assist Deming due to the passage of time since the domain was transferred.  Id. ¶ 46.  Consequently, on July 24, 2014, attorney Lawrence Townsend, who had represented International and eventually filed the initial complaint in this action, wrote to Reitmeyer about his allegedly unlawful acts in connection with the domain name.  Opp'n, ECF No. 14-1, Ex. 20.  Townsend's missive noted that Reitmeyer's "liability for such a clear case of cybersquatting under federal law is not only an injunction and transfer of the domain name, but also statutory damages up to $100,000 and an award of Safe Drain's attorneys' fees."  Id. (emphasis added).

Shortly after the formation of Safe Drain International Delaware, Deming's relationship with the Brasbergers also began to sour.  Indeed, by October 2, 2014, and in some instances much earlier, Plaintiffs allege Deming learned that Brasberger, Jr. (1) terminated Deming's administrative rights to the Customer Relationship Management System ("CRM"), which cut off Deming's ability to control marketing, customer service, and sales of the company's extensive customer base, ECF No. 5 ¶ 49; (2) had been preventing Deming from accessing contacts and leads in the CRM systems for months prior, id. ¶ 50; (3) took control of the website and substituted his personal contact information for all but two of the ten EPA regions, including Deming's region, id. ¶ 53; and (4) altered the site so all leads would be sent to Brasberger, Jr. alone, id. ¶ 54.

1     According to Plaintiffs, on October 4, 2014, Deming met with Brasberger, Sr. and Holmes in an attempt to resolve their issues related to the control of the business. Id. ¶ 59. Deming asserts that at the meeting the parties agreed that Defendants "would release all control of accounting, the CRM system,…the domain and website, and all other facets of…corporate operations" on October 6, 2014. Id. ¶ 64. Plaintiffs also claim that this meeting resulted in Defendants strong arming Deming into signing an agreement, a copy of which has not been provided to the Court, without giving him adequate time to read it or consult with a lawyer. Id. ¶¶ 61-65.

    According to Plaintiffs, October 6th came and went and Defendants did not perform their end of the bargain. Rather, they refused to return control of the website, domain, CRM system, and accounting, and also terminated Plaintiffs' control over the business' Facebook page and changed all contact information thereon. Id. ¶¶ 66-67. In addition, according to Plaintiffs, beginning in mid-October Defendants began telling third parties that Deming was unable to pay his bills, had not filed corporate tax returns and that Safe Drain, Inc. was a defunct corporation. Id. ¶¶ 73, 82-83.

    On October 19, 2014, Reitmeyer allegedly contacted Palm Tree, the <safedrain.com> website manager, and indicated he owned and controlled the domain for the protection of himself and other investors. Id. ¶ 73. Additionally, Deming alleges that on this date Defendants took control of all <safedrain.com> emails, including Deming's personal account, and began sending emails to customers while posing as Deming. ECF No. 9 at 8.

## STANDARD

    Issuance of a temporary restraining order, as a form of preliminary injunctive relief, is an extraordinary remedy, and Plaintiffs have the burden of proving the propriety of such a remedy. See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). In general, the showing required for a temporary restraining order and a preliminary injunction are

the same. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Def. Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter).  The propriety of a TRO hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in Plaintiffs' favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

Mandatory injunctions are subject to heightened scrutiny even beyond that normally applied to preliminary injunctive relief generally. Dahl v. HEM Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993). They are particularly disfavored and will not be granted unless extreme or very serious harm will result. Marlyn Pharms., Inc. v. Mucos, 571 F.3d 873, 879 (9th Cir. 2009).  The court must accordingly be "extremely cautious" about granting such relief. Martin v. Int'l Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984).

**ANALYSIS**

In their Application, Plaintiffs ask that the Court order Defendants to:

1. Refrain from holding funds properly belonging to Plaintiffs;

    2. Refrain from withdrawing or transferring any funds from any account of Plaintiffs;

    3. Refrain from holding property properly belonging to Plaintiffs, including, but not limited to, demo units, valves, and other items of equipment; sales literature (brochures and cut sheets) and/or trade show displays;

    4. Refrain from holding proprietary software and rights properly belonging to Plaintiffs, including, but not limited to, email accounts, Customer Relationship Management ("CRM") software, and Facebook account(s);

    5. Refrain from any and all use of the "Safe Drain" mark, including, but not limited to, advertising, websites, social media, production, sales, and/or solicitations;

    6. Refrain from contacting any vendors of Plaintiffs;

    7. Provide Plaintiffs with the names of all customers or potential customers who have made inquiry as to any Safe Drain product from and after January 1, 2014;

    8. Refrain from harassing Deming or any other staff member of Plaintiffs;

    9. Refrain from providing access to any person, other than Plaintiffs, of any Safe Drain proprietary information, funds, and accounts; and

    10. Refrain from contacting any customer of Plaintiffs and/or from using Plaintiffs' customer lists.  ECF No. 9-1 at 21-22.

Plaintiffs are not simply seeking to maintain the status quo until a preliminary injunction can be issued.  Instead, the relief requested seeks to alter business relationships and would involve a substantial alteration of the parties' respective positions.  Therefore, this Application is for a mandatory injunction, which the Court must view with heightened scrutiny.  Dahl, 7 F.3d at 1403.

A careful analysis of the sequence of events shows that Plaintiffs have been less than expeditious about bringing this dispute to the Court's attention.  While many of the facts are in dispute, Plaintiffs' counsel repeatedly represented at the hearing that

1  Deming was aware by October 19, 2014, that Defendants had wrested full control of the
2  business from him and had no interest in compromising.  On October 21, 2014, Plaintiffs
3  finally filed a two count complaint naming Reitmeyer as the sole defendant.  ECF No. 1.
4  The initial complaint was not accompanied by an application for a TRO or preliminary
5  injunction.  Neither did Plaintiffs immediately seek a TRO when they filed the operative
6  First Amended Complaint twenty-two days later, ECF No. 5; rather, they waited an
7  additional eight days to file their TRO application, ECF No. 9.  Plaintiffs' delay militates
8  against the showing of imminent and irreparable harm required for preliminary injunctive
9  relief.  Because Plaintiffs have not treated this situation as an emergency over the
10 preceding months, the Court will not grant relief on an emergency basis.

Additionally, given the convoluted nature of this case, the widely divergent factual position taken by the parties, and the fact that a number of the Defendants have not even yet been served, adjudicating this matter on an emergency basis, without full and complete briefing, is unwarranted and unwise.  See Martin, 740 F.2d at 675.

## CONCLUSION

Given the considerations outlined above and for the reasons stated on the record during the November 25, 2014 hearing, Plaintiffs' Application for a Temporary Restraining Order, ECF No. 9, is DENIED.[3]

IT IS SO ORDERED.

DATED:  December 1, 2014

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] As the Court noted on the record during the TRO hearing, the parties' actions between now and the hearing on Plaintiffs' Application for a Preliminary Injunction, which is currently set for January 22, 2015, will be heavily scrutinized.